**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | | |
|---|---|---|
| Shirlan Mosely-Jenkins, | ) | Civil Action No.: 5:19-cv-00701-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Orangeburg County Consolidated | ) | |
| School District 4 and Tim Newman, | ) | |
| in his individual and official capacity | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Based on alleged incidents arising during her employment, Plaintiff Shirlan Mosely-Jenkins ("Jenkins") sued her former employer, Defendant Orangeburg County Consolidated School District 4 (the "District") for violations of her civil rights pursuant to 42 U.S.C. § 1983, age discrimination and retaliation pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, defamation, defamation *per se,* and gross negligence. (ECF No. 1). Jenkins also alleges causes of action for defamation, defamation *per se*, and gross negligence against Defendant Tim Newman ("Newman"), in his individual and official capacities. *Id.*

This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") (ECF No. 27) filed on November 6, 2019. Within the Report, the Magistrate Judge recommends that the court grant in part and deny in part Defendants' Motion to Dismiss (ECF No. 9). More specifically, the Magistrate Judge recommended that the court dismiss Jenkins' first cause of action under 42 U.S.C. § 1983 as to the District, and dismiss the fifth cause of action for gross negligence as to both Defendants. Further, the Magistrate Judge recommended that the Motion be denied as to Jenkins' defamation and defamation *per se* claims against Newman. (ECF No. 27). For the reasons stated herein, the court **ACCEPTS** the Magistrate

Judge's Report (*Id.*), and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 9).

## I. PROCEDURAL AND FACTUAL BACKGROUND

The Report provides a thorough examination of the facts, which this court incorporates herein without a full recitation. (ECF No. 27 at 1–2.) As brief background, the District provides public education to students in Orangeburg County. (ECF No. 1 at ¶ 2.) Through her Complaint, Jenkins alleges that she was a highly qualified, certified educator with approximately forty (40) years of experience. (ECF No. 1 at ¶ 8.) Jenkins had been employed as an Assistant Superintendent of Curriculum and Instruction for almost thirty-five (35) years. (ECF No. 1 at ¶ 9.) Jenkins alleges that, in or around April 2017, Newman, the District Superintendent, asked Jenkins when she was going to retire and informed her about his five (5) year plan, which included his desire to hire someone to "take over [Jenkins]'s job under a new job title [of] Chief Academic Officer for Secondary Schools." (ECF No. 1 at ¶¶ 11, 13.) In his Answer, Defendant Newman admits that he advised Jenkins of his plans to restructure the School District's office. (ECF No. 7 ¶ at 13.) He further admits that he advised Jenkins of his intent to recommend to the School District's Board of Trustees (the "Board") that Jenkins' position be eliminated. (ECF No. 7 at ¶¶ 15, 22.) Jenkins alleges that she informed Newman that she was not planning on retiring, and Newman responded by allegedly stating that Jenkins could "draw social security" and that she "could marry soon." (ECF No. 1 at ¶¶ 11, 12.) As further support for her claims, Jenkins alleges that Newman has also commented to another person that two applicants for Director of Special Education were "too old to hire." (ECF No. 1 at ¶ 18.)

Jenkins further alleges that, during a later time, Newman went to the District's Board of Trustees and informed its members that Jenkins intended to retire. (ECF No. 14.) Relying on this

statement without confirmation from Jenkins, the Board then changed the "Assistant Superintendent of Curriculum and Instruction" title to "Chief Academic Officer for Secondary Schools." (ECF No. 1 at ¶¶ 12, 15, 16.) Both Defendants admit that the School District's Board eliminated the position formerly held by Jenkins. (ECF No. 7 at ¶ 15.) Jenkins also alleges that Newman requested that Jenkins train the individual hired as the Chief Academic Officer for Secondary Schools. (ECF No. 17.)

Despite these alleged changes to her job title, Jenkins alleges that, on May 1, 2017, the District gave Jenkins a letter of agreement for the 2017-2018 school year and, on January 8, 2019, the District gave Jenkins a letter of intent for the 2018-2019 school year. (ECF Nos. 1 at ¶¶ 20, 21; 7 at ¶¶ 19, 20.) Jenkins signed her letters of intent indicating that she wanted to be considered for employment. (ECF No. 1 at ¶ 21.) Jenkins alleges that, in March 2018, Newman again told Jenkins that he intended on eliminating her position and told the District's Board that Jenkins was retiring. (ECF No. 1 at ¶ 22.) Subsequently, Jenkins received calls from the District and education colleagues from outside the District asking if she was retiring, and whether she was specifically retiring due to her "early onset Alzheimer's disease." (ECF No. 1 at ¶ 23.) Jenkins alleges that the District hired Dr. Jeanie Monson, a white female who was approximately twelve (12) years younger than Jenkins, as the Chief Academic Officer of Secondary Schools, which according to Jenkins is the same role as Assistant Superintendent of Curriculum and Instruction. (ECF No. 1 at 24.) Defendants admit that Jenkins was not rehired, but that Dr. Jeanie Monson's hiring was for a different position than that previously held by Jenkins. (ECF No. 7 at ¶¶ 24, 44.)

On March 8, 2019, Jenkins filed her Complaint. (ECF No. 1.) On April 10, 2019, Defendants filed their Answer denying Jenkins is entitled to the relief she seeks. (ECF No. 7.) That same day, Defendants filed a Motion to Dismiss Certain of Jenkins' Claims, (ECF No. 9),

particularly the alleged violations of 42 U.S.C. § 1983 as to the District; defamation and defamation *per se* against Newman, and gross negligence against both Defendants. (ECF No. 9.) Defendants did not move to dismiss Jenkins' cause of action for age discrimination. The Magistrate Judge issued her Report and Recommendation ("Report") (ECF No. 27) on November 6, 2019. Jenkins timely filed objections ("Objections") to the Magistrate Judge's Report on November 20, 2019. (ECF No. 28.) Jenkins' Obejections are ripe for review.

## II. LEGAL STANDARD

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(c) for the District of South Carolina. The Magistrate Judge makes only a recommendation to the court, which has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court reviews *de novo* only those portions of a Magistrate Judge's Report and Recommendation to which specific objections are filed, and reviews those portions which are not objected to – including those portions to which only "general and conclusory" objections have been made – for clear error. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

Because Jenkins objects only to the Magistrate Judge's recommendation that the court dismiss her 42 U.S.C. § 1983 claim as to the District, the court will narrow its focus on the § 1983 claim. Jenkins puts forth two objections and the court will address each objection in turn.

First, Jenkins challenges the Report and asserts that the Magistrate Judge holds Jenkins' Complaint to a higher pleading standard than what *Iqbal-Twombly* requires because the Magistrate Judge determined that she must "allege that the policies or customs themselves worked to deprive her of such rights, not that the municipality failed to follow policy on one occasion." (ECF No. 28 at 2.) Jenkins argues that at the pleading stage, she is "under no duty to establish liability against Defendants or to satisfy the elements of her *prima facie* case." (ECF No. 28 at 3.)

Unfortunately, Fourth Circuit jurisprudence belies this assertion. In order for a § 1983 claim to survive a motion to dismiss, it is well-established that a plaintiff is required to allege that the District's policy or customs deprived the plaintiff of her rights. This is because "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Moreover, "only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). "Because section 1983 was not designed to impose municipal liability under the doctrine of *respondeat superior*, the 'official policy' requirement was 'intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby to make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *Riddick v. Sch. Bd. of the City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). The court finds that Jenkins was required to allege, at a minimum, that the District's policies were the driving force of her alleged deprivation of rights and further finds that the Magistrate Judge did not hold Jenkins to a higher standard by requiring such.

Second, and as an alternative argument, Jenkins asserts that "if the court determines that [she] was not held to a higher pleading standard, then the Magistrate Judge erred in determining that she failed to allege sufficient facts to sustain her § 1983 claim. The essence of Jenkins' second objection is that her allegations do "expressly reference District policy and custom…" (ECF No. 28 at 4.) Jenkins also asserts that she alleged that Newman was the "official policymaker for purposes of implementing a policy or custom—in this case his 5-year plan" and that she alleged that the District failed to implement its "GCQE" policy, which requires retirees to confirm their intent to retire in writing. (*Id.*) However, a municipal policy or custom arises in four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train [personnel], that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle*, 326 F.3d at 471 (citations omitted).

Here, Jenkins' § 1983 claim fails to invoke a municipal policy or custom that deprives Jenkins of her rights as adopted by the District or by the Board—which, as the Magistrate Judge observed, makes final decisions regarding employment under South Carolina law. S.C. Code Ann. § 59-19-10 (2020). The Magistrate Judge noted that, "[i]n South Carolina, final policy-making authority for the management and supervision of a school district is vested by statute in a school district's board of trustees." (ECF No. 27 at 10.) citing S.C. Code Ann. § 59-19-10. Although Jenkins did mention Newman's five-year-plan, she failed to outline what the meaning of Newman's five-year-plan was and why it created official policy or custom. Additionally, Jenkins failed to establish how Newman qualifies as an official policymaker under *Monell*—especially considering that "final policy-making authority . . . is vested by statute in a school district's board

of trustees." S.C. Code Ann. § 59-19-10. In other words, under *Monell*, only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach." *Lytle*, 326 F.3d 471 (4th Cir. 2003). One employee's 5-year plan to possibly replace Jenkins is not the kind of systematic policy intended by *Monell*. Jenkins' conclusory allegation that the 5-year plan is the District's custom or policy is unsupported by the alleged facts. Bare assertions that "amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim" cannot withstand a motion to dismiss. *Iqbal*, 556 U.S. at 681. Jenkins' 1983 allegations regarding the District's liability under § 1983 are exactly the type of allegations that *Iqbal* determined were not enough as they are wholly lacking in factual support. A municipality may be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those edicts or acts **may fairly be said to represent official policy**, inflicts the injury…". *Monell*, 436 U.S. at 694. (Emphasis added). To state such a claim, Jenkins must identify the specific policy or custom in the Complaint. *See Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir.1987). The court finds that Jenkins failed to do so here.

## IV. CONCLUSION

After a thorough review of the Report and the record in this case, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 27). Therefore, the court **GRANTS** Defendants' Motion to Dismiss (ECF No. 9) as to Jenkins' first and fifth causes of action against Defendant Orangeburg County Consolidated School District 4 under 42 U.S.C. § 1983 and for gross negligence, respectively, and **DENIES** without prejudice Defendants' Motion to Dismiss (ECF No. 9) as to Jenkins' fourth cause of action for defamation and defamation *per se* against Defendant Newman.

**IT IS SO ORDERED.**

March 25, 2020
Columbia, South Carolina

*J. Michelle Childs*
United States District Judge